**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK APPLE IPHONE, CURRENTLY IN SECURE FBI STORAGE AT 2400 CHAMBER CENTER DRIVE, FT. MITCHELL, KENTUCKY | **FILED UNDER SEAL**<br><br>Case No. 5:22-MJ-5441 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, David Emberton, being duly sworn, state:

      1.     I am an officer with United States Customs and Border Protection, and have been since July of 2002. Since August of 2018, I have been detailed to the Federal Bureau of Investigation and assigned to the Joint Terrorism Task Force. I have training and experience in many aspects of criminal and counterterrorism investigations including counterterrorism specific training, conducting surveillance, and interviewing subjects, informants and witnesses. I have participated in international and domestic terrorism investigations, and I am familiar with the activities, actions, and behavior of the subjects of those investigations, including their use of electronic communications to further their activities.

      2.     I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a black Apple iPhone (the SUBJECT DEVICE) described in Attachment A, and which is presently in secure FBI

storage at 2400 Chamber Center Drive, Ft. Mitchell, Kentucky, and the extraction from

that device of electronically stored information described in Attachment B.

3.     Based on my training and experience and the facts as set forth below, there

is probable cause to believe that the SUBJECT DEVICE contains fruits and

instrumentalities of violations of 18 U.S.C. §§ 875(c) (threatening interstate

communications) and 922(g)(1) (possession of a firearm or ammunition by a person

convicted of a crime punishable by a term of imprisonment exceeding one year).  I am

familiar with the facts set forth herein based on my personal observations, information

provided to me by other law enforcement officers and other personnel participating in

this investigation, and the review of documents and other evidence.

4.     As the purpose of this affidavit is only to establish probable cause to

support the issuance of a warrant to search the SUBJECT DEVICE, I have not set forth

each and every fact known to me concerning this investigation.  Where statements of

others are set forth in this affidavit, unless directly quoted, they are set forth in substance

and part.  In addition, the events described in the affidavit occurred on or about the dates

indicated.

### PROBABLE CAUSE

5.     The Federal Bureau of Investigation (FBI) has been investigating Trenton

Layne TAYLOR, a resident of Warsaw, Kentucky and Carrollton, Kentucky, for

violations of federal law pertaining to possession of firearms in the Eastern District of

Kentucky and elsewhere.

6.　　According to a Carroll County, Kentucky, Sheriff's Department report, on or about July 22, 2020, TAYLOR and three accomplices went to a residence in Carroll County, Kentucky, apparently as part of an ongoing dispute with the resident.  They proceeded to break into the residence and stole several items.  The break-in was captured on video by cameras inside and outside the residence.  Law enforcement officers subsequently arrested TAYLOR and his accomplices.  TAYLOR was charged with violation of Kentucky Revised Statue § 511.020, first degree burglary, a felony; Kentucky Revised Statute § 514.110, receiving stolen property, a felony; and Kentucky Revised Statute § 527.020, carrying a concealed deadly weapon, a misdemeanor.  At the time of his arrest, he had concealed on his person a Glock 19 pistol.  TAYLOR was under 21-years of age at the time of his arrest, and was therefore prohibited under Kentucky law from carrying a concealed weapon.  The police report noted the Glock pistol had an obliterated serial number.

7.　　TAYLOR was released pending trial.  However, on April 28, 2021, a warrant was issued for his arrest for violation of pre-trial conditions for failing an alcohol test.

8.　　In June of 2021, TAYLOR pleaded guilty in Carroll County Circuit Court (Case 20-CR-00123) to violation of Kentucky Revised Statue § 511.030, complicity to burglary second degree, a felony; Kentucky Revised Statute § 514.110(3)(a), complicity to receiving stolen property more than $500 but less than $10,000, a felony; and Kentucky Revised Statute § 527.020, carrying a concealed deadly weapon, a misdemeanor.  TAYLOR received a sentence of 7 years and 6 months on the burglary

charge, 5 years on the receiving stolen property charge and 12 months on the concealed

deadly weapon charge with all sentences to run concurrently.  TAYLOR's sentences

were suspended, and he began serving a five-year term of probation.

9.      Both prior to and after his conviction, TAYLOR was an active participant

in online forums devoted to the Booglaoo movement.  Adherents to the Booglaoo

movement are generally anti-government, and believe there will be a second civil war in

the United States.  TAYLOR's postings, using various user names, in the forums show

him to agree with these beliefs, and also connect him with other known members of the

Boogaloo movement.

10.      Signal is an application which allows users to send messages between

individuals and groups of individuals, including sending photos and videos and making

voice and video calls.  TAYLOR has used various user/screen names on the Signal

application, but uses phone number 502-663-2837 as the registered number for the

account.  Two of TAYLOR's known user/screen names are "Warcrime Actual" and

"Warcrime Actual (Blacklisted)."  On July 6, 2022, a confidential FBI source provided a

screenshot from the Signal application showing the phone number tied to the "Warcrime

Actual (Blacklisted)" user/screen name:



11.     A search on 502-663-2837 in a publicly available database returns

TAYLOR's name, address and social security number as connected to that phone

number.  TAYLOR has posted extensive personal information that ties him to the

"Warcrime Actual" and "Warcrime Actual (Blacklisted)" user/screen names, including at

one point a copy of his conviction record from the Commonwealth of Kentucky:



12.     At various times, Trenton TAYLOR has made posts on the Signal

application involving the SIG Sauer pistol, Remington 770 rifle and American Tactical

AR-style rifle.  These posts imply or actually show TAYLOR in physical possession of

the firearms.  Using the "Warcrime Actual" user/screen name, TAYLOR posted the

following photos via the Signal application:







Investigators believe the second and third photos in the series above showed TAYLOR.

Investigators identified the other individual appearing in the photos, located that

individual, and interviewed that individual.  The individual confirmed to investigators

that the photos did indeed show TAYLOR, and that TAYLOR was in possession of

firearms as shown in the photos.

  13. In the second and third photos in the series above, the individuals pictured

had taken steps to obscure their identities.  Based on my training and experience and

consultation with electronic device experts, I believe the device used to post these and

similar photos may contain additional information that could be pertinent to confirming

the identities of these individuals, such as the dates and times the photos were taken.

14.     TAYLOR's posts include anti-government and anti-law enforcement

rhetoric, including threats to kill government officials and law enforcement officers.

Using the "Warcrime Actual" user/screen name, TAYLOR made the following posts via

the Signal platform:











15.     On or about November 3, 2022, a federal grand jury sitting in Lexington,

Kentucky indicted TAYLOR on one count of violating 18 U.S.C. § 922(g)(1), possession

of a firearm by a person committed of a crime punishable by a term of imprisonment

exceeding one year.  The indictment was the result of TAYLOR's possession of a SIG

Sauer P365 XL pistol at various times in the Eastern District of Kentucky.  Based on the

indictment, an arrest warrant for TAYLOR was subsequently issued.  A federal search

warrant was also obtained for TAYLOR and his 2009 Chevrolet Impala.  TAYLOR had

posted online about carrying firearms in his vehicle and he had been seen in the vehicle

with firearms in his possession.  In addition to firearms and related items, the search

warrant also authorized the search for and seizure of electronic devices that may contain

evidence of violations of 18 U.S.C. § 922(g)(1).  On November 4, 2022, TAYLOR was

arrested and the search warrant was executed.  The SUBJECT DEVICE was seized from

TAYLOR during his arrest.  No firearms were located during the execution of the search

warrant.

      16.     On or about December 1, 2022, a federal grand jury sitting in Lexington,

Kentucky issued a superseding indictment charging Trenton TAYLOR with two

additional counts of violation of 18 U.S.C. § 922(g)(1).  The additional counts arose from

TAYLOR's possession of a Remington 770 rifle and an American Tactical AR-style rifle

at various times in the Eastern District of Kentucky.  Both rifles are currently in

possession of the FBI.  An interstate nexus review performed by the bureau of Alcohol,

Tobacco and Firearms and Explosives indicates that both rifles were manufactured

outside the Commonwealth of Kentucky.

      17.     TAYLOR's arrest took place at the Kentucky Probation and Parole office

in Carrollton, Kentucky.  Minutes before his arrest, TAYLOR had been in

communication with that office by phone.  Kentucky Probation and Parole has advised

that TAYLOR was using the phone number 502-663-2837 to communicate with them.

As TAYLOR had only one phone in his possession at the time of his arrest, we believe

the SUBJECT DEVICE, currently in FBI possession, is the phone TAYLOR used to

communicate on the Signal application.

## TECHNICAL TERMS

18.    Based on my training and experience, I use the following technical terms to

convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data

communication through radio signals.  These telephones send signals

through networks of transmitter/receivers, enabling communication with

other wireless telephones or traditional "land line" telephones.  A wireless

telephone usually contains a "call log," which records the telephone

number, date, and time of calls made to and from the phone.  In addition to

enabling voice communications, wireless telephones offer a broad range of

capabilities.  These capabilities include: storing names and phone numbers

in electronic "address books;" sending, receiving, and storing text messages

and e-mail; taking, sending, receiving, and storing still photographs and

moving video; storing and playing back audio files; storing dates,

appointments, and other information on personal calendars; and accessing

and downloading information from the Internet.  Wireless telephones may

also include global positioning system ("GPS") technology for determining
the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded
images.  Images can usually be retrieved by connecting the camera to a
computer or by connecting the removable storage medium to a separate
reader.  Removable storage media include various types of flash memory
cards or miniature hard drives.  Most digital cameras also include a screen
for viewing the stored images.  This storage media can contain any digital
data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod)
is a handheld digital storage device designed primarily to store and play
audio, video, or photographic files.  However, a portable media player can
also store other digital data.  Some portable media players can use
removable storage media.  Removable storage media include various types
of flash memory cards or miniature hard drives.  This removable storage
media can also store any digital data.  Depending on the model, a portable
media player may have the ability to store very large amounts of electronic
data and may offer additional features such as a calendar, contact list, clock,
or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can

store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.    Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera,

portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

21.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.	I know that when an individual uses an electronic device to transmit threatening communications over the Internet, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may

contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

23.     Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.     Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.     Based on the foregoing, I believe there is probable cause that evidence of violations of 18 U.S.C. §§ 875(c) and 922(g)(1) will be found on the SUBJECT DEVICE, and I respectfully request that the Court issue the proposed search warrant authorizing examination of the SUBJECT DEVICE, as further described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ David Emberton

David Emberton
Task Force Officer
Federal Bureau of Investigation

Sworn to and attested by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means this 21st day of December, 2022.

UNITED STATES MAGISTRATE JUDGE